Wardlaw, J.,
dissenting. The result which has been attained in this case, seems to me to be dangerous. By fiction of law a judgment is established against the estate of a deceased person, with all the precedence and immediate enforcibility that pertain to judgments which subsisted against him at his death, Avhen in fact, at his death, there was; not to be found in the records of the Court, a trace of even a suit commenced against him: and this is done by force of a cognovit signed before the beginning of a term which preceded his death. I cannot deny that a judgment entered in vacation has relation to the term next preceding its entry, being but the formal registration in vacation of what was adjudged by the Court. Nor can I deny that a cognovit is a present acknowledgment of a previous act of the Court conformable to it; and so, although no suit may be actually pending, authorizes the fiction of a suit pending, and waives all objections to the entry of defendant’s formal appearance, and to everything else which is necessary to give the record the form of an action confessed, *173 just as if the cognovit bad been signed in a suit actually at issue. If a cognovit be without date, I will not say that the plaintiff’s attorney may not, at any time afterwards during the life of the defendant, enter judgment upon it, entitling the judgment as of the term next preceding the entry. But when a cognovit is dated of a day in vacation, it is a confession of what was adjudged in a suit supposed to have been pending at the term next preceding the date,"and the entry of judgment must regularly have relation to that term.
I think that the tenth Rule of Court applies to judgments confessed not less than to those actually given by the Court. Every judgment is the act of the Court and must be obtained in Court. The fiction founded on defendant’s implied waiver of objection, which, where no suit was actually pending at a preceding term, makes a judgment entered in vacation on a cognovit, a judgment of the preceding term, considers the cognovit as equal to a judgment by default actually rendered at the preceding term, but it makes it no better, and there is no reason in justice or expediency why the fiction should be better than the truth, or a judgment supposed to have been obtained more effective than one actually obtained.
This cognovit was dated “ this 29th day of November, A. D., 1851,” and on its face shows no terms nor conditions. If nothing more appeared, I would then be of opinion that judgment on it could not be entered after the end of the term next following the vacation in which it was signed, that is, after March Term, 1852.
But the cognovit was written upon the back of a blank sheet of paper, folded like a declaration, and that sheet was enclosed within another sheet that was sealed, and on the outside of that other was written the agreement. This agreement shows that the cognovit was intended to secure the payment of four notes, that judgment was not to be entered until default in the payment of either of those notes had been made, and that Mr. Bancroft, as the mutual depositary of the parties was to hold *174 the cognovit until the default, or until all the notes had been paid, and then was to deliver it to the one or the other party according to the event.
I conceive that this agreement contains the consent of the defendant to waive the rule of Court, or, in other words, his consent to be considered at any time afterwards when judgment might be entered according to the ágreement, as having-received the notice required by the rule. I think that on the first day of June, 1852, when default occurred, Mr. Bancroft might have delivered the cognovit to the plaintiff’s attorney, and the attorney might nunc pro tunc have entered judgment entitled of October Term, 1851. But the defendant died before Mr. Bancroft yielded possession of the cognovit, and of course before judgment was entered. The continuing consent which the agreement contained during the life of the defendant, I think was arrested by his death. Thereupon, the case, when presented to the clerk for entry of judgment nunc pro tune, by consent, was in the same condition it would have been in, if, after notice and before an order, the defendant had died; that is just as if the judgment had been by default, had been rendered at October Term, 1851, had not been entered before or during the next term, and' notice of intention to enter it had been given June 1,1852, but before the order which would have been requisite could be obtained at October Term, 1852, the defendant had died. Possibly when this judgment was entered, good cause existed why it should not be entered; possibly no default then existed, as the defendant, if alive, could have shown to the satisfaction of the mutual depositary; the clerk after the death of the defendant had no right to assume that there was no cause, as in his lifetime may have been assumed for his failure to object; and the depositary could not then, by this act, make the acknowledgment of default, which he was authorized to make for the defendant whilst he lived.
In the case of Calvert vs. Tomlin, (5 Bing. 1; 15 Eng. C. L. R. 343,) the cognovit was signed in Hilary Term; the con *175 dition was, “ that no judgment should be entered up, or execution issue, unless default were made in payment the 1st April next,” the death of the defendant on 16th Eebruary, and the default on the 1st April, both occurred before the beginning of the next term, and so also did the entry of judgment on 10th of April. Under the fiction which makes a judgment entered in vacation have relation to the first day of the preceding term, the entry of judgment, notwithstanding the death of the defendant was held regular. G-aselee, J., remarks, that “ the plaintiff does not want the authority of the Court to enter up judgment, which follows, as of course, upon the cognovit,” and Buerough, J., saying, that “ the intent of the parties was, that at all events, judgment should be entered up, although time was to be allowed for the payment of the debt.” In the case before us, however, it appears that, under our rule of court, the authority of the court, or the equivalent assent of the defendant, was wanted by the plaintiff; and the intent of the parties plainly was, not that a judgment should be entered at all events, but was, that it should be entered only after an act to be done by Mr. Bancroft, ‘when a contingency had occurred. If this cognovit had been left in the hands of the plaintiff’s attorney, and the default had occurred whilst, under the rule of court, judgment might have been entered, of course, without notice, I admit that the previous death of the defendant would not have affected the regularity of the judgment.
But the judgment not entered until August, 1852, has been entitled of March Term, 1852. This is an inconsistency-in form. The record says, that the defendant came and confessed at March Term, whereupon the Court adjudged against him, whereas the date of the cognovit coupled with the fiction of relation, shows that the Court gave judgment against him at October Term, 1851. If the entry as of March Term is correct, then the cognovit was not a present acknowledgment of a matter past in a pending suit, but was a prospective arrangement for a future suit, in other words, it was a warrant *176 of attorney to confess, and not a cognovit. What difference is there between giving to Mr. Bancroft a warrant to confess, and giving to him a paper signed by tbe defendant, which, according to future events, might or might not become a confession of the same effect as if it had been signed at some future day. The long approved legislation of 1785, (7 Stat. 232, § 42,) has to very little effect annulled all powers of attorney for confessing judgment before action brought, if the purpose of such a power may be answered by a trifling change of form.
In England, the courts will not give leave to enter judgment on a warrant of attorney, after the defendant’s death,'-even though it were so stipulated in the warrant; (2 Ad. & El. 365,) to the entry of a judgment on cognovit, affidavits preventive of frauds are there required; and by statute such judgment cannot be signed after the death of a sole defendant. Good policy, which dictated both these regulations and our Act of 1785, should, I think, in this case prevent our rule of court from being dispensed with by the presumed assent of a deceased defendant.

Motion granted.